# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

SAMMY BRIAN MORRIS, )
 )
    Plaintiff, )
 )
v. ) CV418-272
 )
CHATHAM COUNTY C.N.T. DIVISION, )
Narcotics Division, )
 )
    Defendant. )

## **ORDER AND REPORT AND RECOMMENDATION**

*Pro se* plaintiff Sammy Brian Morris, detained at Chatham County Jail, alleges in his 42 U.S.C. § 1983 Complaint that he was subjected to excessive force. Doc. 1 at 5-6. The Court granted plaintiff's request to pursue his case *in forma pauperis* (IFP), doc. 3, and he returned the necessary forms. Docs. 4, 5 & 6. The Court now screens the Complaint pursuant to 28 U.S.C. § 1915A.[1]

---

[1] During the early screening required by § 1915A, the Court must identify "cognizable claims" in the prisoner's complaint and dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.

Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in plaintiff's Complaint are taken as true and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

Morris alleges that he fled on foot after a routine traffic stop in Bloomingdale, Georgia. Doc. 1 at 5. He then became "inescap[a]bly tangled in a briar patch." *Id*. He claims he fell to the ground before officers arrived, but that a Bloomingdale officer tased him anyway. *Id*. After he had been subdued, a member of the "Chatham County Narcotics team," the Court assumes that Morris is referring to the County's Counter Narcotics Team ("CNT"), *see* Counter Narcotics Team, https://cnt.chathamcountyga.gov/ (last visited Jan. 14, 2019), proceeded into the briar patch to retrieve plaintiff and physically assaulted him. *Id*. Morris claims that his arm was broken in this assault and that he sustained other injuries. *Id*. He was then taken to a waiting ambulance where he received treatment for his broken arm and the other injuries he sustained during his arrest. *Id*.

Morris also claims that after he was escorted to the hospital, he was sexually assaulted on the loading dock of the hospital. *Id*. at 6. According to Morris, CNT officers asked him " 'Where did [he] have all of the drugs hidden?" *Id*. "In a very condescending tone," Morris responded that he had drugs hidden on his person, and a body cavity

---

(2009) (discussing a Rule 12(b)(6) dismissal).

search was performed. *Id*. Morris alleges that the officer performing this search made inappropriate comments to him during this procedure. *Id*.

As an initial matter, plaintiff has filed suit against the CNT itself. Doc. 1 at 4. However, the Police Department, and by extension its subdivision, is not an entity subject to suit under § 1983. *Lovelace v. DeKalb Cent. Prob.*, 144 F. App'x 793, 795 (11th Cir. 2005) (county police department not a legal entity subject to suit under § 1983); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (sheriff and police departments are not considered legal entities subject to suit), *cited by Bunyon v. Burke Cnty.*, 285 F. Supp. 2d 1310, 1328 (S.D. Ga. 2003). To the extent Morris believes that the department is responsible as the officers' employer, claims against local governments, government officials, or supervisors brought pursuant to § 1983 cannot be based upon theories of *respondeat superior* or vicarious liability. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). That is, a governmental entity cannot be held liable just because it employs a tortfeasor. The CNT, therefore, is not a

viable defendant and Plaintiff's claims against the CNT should be **DISMISSED**.

Morris has also listed as additional defendants "[a]ny and all officers and agents involved." Doc. 1 at 4. Thus, it is clear from the face of plaintiff's complaint that he is attempting to sue the various police officers involved in his arrest, though he apparently does not know their names or any other individually identifying information. Accordingly, the Clerk is **DIRECTED** to amend the caption in this case to list as defendants Bloomingdale Police Department, Officer John Doe 1, and Chatham County Police Department, Officers John Does 2-4.[2]

Morris's claims against the officers involved in his arrest sound in excessive force. To allege excessive force by an officer in the course of executing an arrest, a plaintiff must assert that the officer's conduct was objectively "unreasonable." *Graham v. Connor*, 490 U.S. 386, 395-97 (1989). Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action. *Id*. at 397. "Determining whether the force used to effect a

---

[2] As will be discussed further, plaintiff's complaint lists four officers from whose actions potential claims could arise. The officer who tased him after he fell in the briar patch, the officer who allegedly beat him after he had been subdued, and the two officers present during his alleged sexual assault.

4

particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotes and cites omitted).

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of a precise definition or mechanical application," . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* The Court examines "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balanc[ing] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (*citing Scott v. Harris*, 550 U.S. 372, 383 (2007)). "Although some amount of force is generally needed to subdue a suspect, the amount used must be reasonably proportionate to the need for force." *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016); *see also Scott*, 550 U.S. at 383 (observing that in determining whether the Fourth Amendment was violated, "we must still slosh our way through the factbound morass of

'reasonableness.'").

Morris has adequately alleged that the two anonymous officers directly involved in his arrest subjected him to excessive force. As to Officer John Doe 1, Plaintiff did not allege that he was unresisting or subdued at the time that officer tased him. He alleges that he was "inescapably tangled." Because of the lenient standards applied to *pro se* plaintiffs' pleadings, the Court will assume at this point that this "inescapably tangled" turn of phrase indicates that Plaintiff was unresisting and no longer attempting to evade capture. *See contra Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1355 (11th Cir. 2015) (reasonable to use taser on fleeing suspect who waded "into the middle of a pond in what [officers] would have reasonably assumed was a continuing attempt to evade capture"). As to Officer John Doe 2, he alleges that he was beaten and that his arm was broken after he had already been subdued by Officer John Doe 1. Altogether taken as true,[3] as his allegations against Officers John Does 1 and 2 must be at this stage, they are enough to warrant a response.

---

[3] Plaintiff is reminded that lying under oath, either live or "on paper," is illegal and punishable by severe sanctions, including criminal prosecution. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012)

As to the two officers plaintiff alleges performed the body cavity search at the hospital, the Fourth and Eighth Amendments apply. The Eleventh Circuit has held that when a search is conducted for evidence, "an officer must have at least a reasonable suspicion that the strip search is necessary for evidentiary reasons." *Evans v. Stephens*, 407 F.3d 1272, 1279 (11th Cir. 2005). The Eleventh Circuit also noted that this "reasonable suspicion" standard might be higher when the search involves "touching genitalia and penetrating anuses." *Id.* In that case "if the search were conducted for purposes unrelated to security considerations, not only would it violate the fourth amendment, . . . , but also it may constitute cruel and unusual punishment under the eighth amendment." *Tribble v. Gardner*, 860 F.2d 321, 325 n. 6 (9th Cir. 1988); *cited in Garrett v. Carter*, 2015 WL 150213, *2 (M.D. Ga. 2015). The Court also looks to the manner in which the searches are conducted. *Powell v. Barrett*, 541 F.3d 1298, 1306-1314 (11th Cir. 2008) ("We also assume, of course, that the searches are not conducted in an abusive manner."); *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (body cavity search violated constitutional rights where individuals were searched in a broom closet, unnecessary force was used, individuals were

ridiculed, hit, and penetrated by an object). Here, Plaintiff alleges that two officers performed a search for drugs, the search occurred in a public place (the hospital loading dock), and the officers made derogatory commentary about the search. Taken as true, this is enough to warrant a response.

In conclusion, Plaintiff's claims against the CNT should be **DISMISSED**. His claims for violations of the Fourth and Eighth Amendments by the four unnamed police officers, are **APPROVED** for service and the Clerk is **DIRECTED** to forward a copy of this Order, along with plaintiff's Complaint, to the Marshal for service upon the defendants so that they may respond.

Meanwhile, it is time for plaintiff to pay his filing fee. His PLRA paperwork reflects $29.30 in average monthly deposits. Doc. 5. He therefore owes a $5.86 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall remit the $5.86 and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee

has been paid in full.[4]

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F.

---

[4] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,**

this 22nd day of January, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA