IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SAMMY BRIAN MORRIS,

    Plaintiff,

v.

OFFICER BRIAN KROUSE,

    Defendant.

CIVIL ACTION NO.: 4:18-cv-272

**O R D E R**

Presently before the Court is Defendant Brian Krouse's Motion for Summary Judgment, (doc. 57).[1] This 42 U.S.C. § 1983 case arises from Plaintiff Sammy Brian Morris' arrest on August 28, 2018. (Doc. 1.) Plaintiff, initially proceeding *pro se*, filed a Complaint, (id.), an Amended Complaint, (doc. 14-1), and, after retaining counsel, a Second Amended Complaint, (doc. 50). Plaintiff alleges that after his arrest, Defendant performed a body cavity search in violation of his constitutional rights.[2] (Id. at pp. 8–9.) Defendant subsequently filed the at-issue Motion for

---

[1] Defendant Krouse initially had three co-Defendants: Officer Adam Willis, Agent Joseph Hood, and Agent Gary Woodruff. (Doc. 50.) All four officers moved for summary judgment as to Plaintiff's claims against them; Defendant Krouse and then-named Defendants Hood and Woodruff filed the present Motion for Summary Judgment, (doc. 57), while then-named Defendant Willis filed a separate Motion, (doc. 55). After the Motions were filed, however, all Defendants except Defendant Krouse were dismissed from the case, (doc. 66). As such, the Court refers to the at-issue Motion simply as Defendant Krouse's Motion and only addresses the arguments that pertain to Plaintiff's claims against him. (Doc. 57.) Accordingly, as all claims against Hood, Woodruff and Willis have been dismissed, the Court **DENIES as moot** the Motion for Summary Judgment to the extent it was filed by Hood and Woodruff, (id.), and **DENIES as moot** Willis' Motion, (doc 55).

[2] In his Second Amended Complaint, Plaintiff asserts a single count against Defendant for the alleged body cavity search, (Count II), stating that he does so "pursuant to [Section 1983 and] the Fourth, Eighth[,] and Fourteenth Amendments." (Doc. 50, p. 8.) While Defendant moves for summary judgment on this count, (doc. 58, p. 1), neither he nor Plaintiff mention the Eighth and Fourteenth Amendments in their briefing, (see id.; doc. 61). Indeed, in his Response, Plaintiff asserts that the "sole remaining issue" is whether Defendant is entitled to qualified immunity for Plaintiff's Fourth Amendment claim. (Doc. 61, p. 3.) As

Summary Judgment, (doc. 57), Brief in Support thereof, (doc. 58), and Statement of Material Facts, (doc. 59). Plaintiff filed a Response, (doc. 61), and a supporting Affidavit, (doc. 62). The parties dispute whether Defendant performed the alleged body cavity search, whether the at-issue interaction took place in a public setting, and whether Defendant is entitled to qualified immunity. (Compare doc. 59, with doc. 63.) For the reasons set forth below, the Court **GRANTS** Defendant's Motion as to Plaintiff's claims against him, (doc. 57).

## BACKGROUND

### I.  Undisputed Timeline Surrounding Plaintiff's Arrest and Search

On the evening of August 28, 2018, Defendant, Agent Hood, and Agent Woodruff—agents with Chatham County's Counter Narcotics Team ("CNT")—were surveilling a residence in relation to an ongoing CNT drug investigation. (Doc. 59, p. 1; doc. 61, p. 1.)[3] After the officers saw a vehicle depart from the residence and run a stop sign further down the road, Agent Hood requested that Officer Willis, an officer with the Bloomingdale Police Department, initiate a traffic stop of the vehicle. (Doc. 59, p. 1; doc. 59-2, p. 5.) During the stop, Plaintiff, who was a passenger in the vehicle, fled to a nearby wooded area. (Doc. 59-1, p. 8.) While other officers pursued Plaintiff into the woods, Defendant remained with the driver of the vehicle. (Id. at pp. 8–9; doc. 59-2, p. 6.)

---

such, the Court will not provide in-depth analyses for any Eighth or Fourteenth Amendment claims; however, to the extent Plaintiff intended to maintain these claims, they fail as a matter of law as explained in Note 8, infra.

[3]  As required by Local Rule 56.1, Defendant's Statement of Material Facts details the events preceding Plaintiff's arrest (leading to the at-issue search) and includes citations to the portions of the record that support the stated facts. (Doc. 59.) Pursuant to Rule 56.1, "[a]ll material facts set forth in the [movant's] statement [of material facts] will be deemed to be admitted unless controverted by a statement served by the opposing party." While Plaintiff did file a "Statement of Facts Which Remain at Issue in Case," his filing does not address—much less controvert—Defendant's statements of fact concerning the events surrounding his arrest. As a result, Defendant's stated material facts on this topic are deemed admitted by Plaintiff.

The officers eventually caught up to Plaintiff, but he resisted their efforts to arrest him. (Doc. 59-2, p. 6.) At some point during the struggle, Plaintiff rolled over, and the officers discovered a "bag of meth." (Doc. 59, p. 3.) When he was finally handcuffed and placed under arrest, Plaintiff was evaluated by EMS; EMS determined that Plaintiff had an injured arm and required further care. (Doc. 62, p. 1.) At this point, Defendant transported Plaintiff to the Emergency Room at Memorial Medical Center, where medical staff gave Plaintiff pain medication and treated his arm. (Id.) Defendant and Woodruff waited outside Plaintiff's treatment room and, upon Plaintiff's discharge, requested a "transport unit" from the Savannah Police Department. (Doc. 59-3, p. 11.) As the officers walked Plaintiff out of Memorial's "Ambulance Entrance" to meet the transport officer, Defendant asked Plaintiff whether he was hiding any drugs on his person.[4] (Id. at p. 12; doc. 59-1, pp. 10–11.) Plaintiff—who was heavily medicated at the time— said "yes" and that the drugs were "up his ass." (Doc. 62, p. 1.) In response, Defendant put on a pair of gloves, pulled back Plaintiff's pants, and began a "search incident to arrest." (Doc. 59, p. 3; doc. 59-3, p. 11.) At some point thereafter, Plaintiff indicated that his statement about the drugs and/or their location had been a joke. (See doc. 59, p. 4; doc. 62, pp. 1–2.) The transport officer took custody of Plaintiff when the search was completed. (Doc. 59, p. 4.)

## II.    Disputed Aspects of the Search

While the parties do not dispute that the search happened after Plaintiff was arrested or that Plaintiff eventually retracted his statement about having drugs on his person, they do dispute what happened during the search and when it stopped. According to Plaintiff, Defendant "bent [him] over the police vehicle, pull[ed] the back of his shorts down[,] and st[u]ck his finger(s) into

---

[4] The parties do not dispute where Defendant searched Plaintiff or that the Ambulance Entrance is not accessible to the public. (Doc. 59-1, p. 11.) According to Plaintiff, however, the area is "fully visible from the adjoining approaches to the Emergency Room and the public parking areas for the Emergency Room," but he does not allege that any additional persons witnessed the search. (Doc. 62, p. 1.)

[Plaintiff]'s rectum." (Doc. 62, p. 1.) Plaintiff also states that he did not say anything "about it being a joke until the cavity search was completed." (Id. at p. 2.)

Defendant, on the other hand, denies conducting a cavity search or searching "between [Plaintiff's] buttocks," as such searches are against CNT policy. (Doc. 59-1, pp. 11–12). Instead, Defendant contends that he merely opened the back of Plaintiff's pants, looked in to see whether he could see any drugs, and stopped the search as soon as Plaintiff said he was joking.[5] (Id.; doc. 59, p. 3.) Woodruff, who was present for the search, testified that he saw Defendant "go[] into an article of clothing to retrieve evidence that [Plaintiff] said was there," (doc. 59, p. 3), but that he "did not witness anything that [he] observed to be a cavity search." (Doc. 59-3, p. 13.) Additionally, the incident was recorded on an unidentified officer's body camera. (See id. at pp. 14, 16; doc. 59-2, p. 10; doc. 59-1, p. 7.) While that video footage was not provided for the Court's review, both Woodruff and Hood reviewed the footage subsequent to the search, (doc. 59-3, p. 14; doc. 59-2, p. 10), and, in his deposition, Hood said that he did not think Defendant acted improperly, (doc. 59-3, p. 10).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting

---

[5] Defendant relies on his deposition testimony to support his version of events. (Doc. 59, p. 3.) The Court notes that neither party cites to—or references—Defendant's police report that then-named Defendant Willis filed as an exhibit to his own Motion for Summary Judgment, (doc. 55-12). In the report, Defendant states that he "pulled open the back of [Plaintiff's] pants and *reached in* to attempt to locate the narcotics." (Id. at p. 11 (emphasis added).) However, because the Court must accept Plaintiff's version of events as true in its resolution of the at-issue Motion, the parties' failure to cite Defendant's police report is immaterial. Indeed, Plaintiff's account of the search necessarily assumes that Defendant "reached in" to Plaintiff's pants.

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (emphasis and citations omitted).

**DISCUSSION**

**I.      42 U.S.C. § 1983: Fourth Amendment and Qualified Immunity**

In Count II of his Second Amended Complaint, Plaintiff asserts a claim against Defendant pursuant to 42 U.S.C. § 1983, alleging that Defendant's actions violated his Fourth Amendment right to be free from unreasonable searches and seizures.[6]  (Doc. 50, pp. 8–9.)  Defendant moves for summary judgment on Plaintiff's claim and argues he is entitled to judgment on the merits or, in the alternative, that he is entitled to qualified immunity.  (Doc. 58, pp. 5–9.)  In response, Plaintiff states that the "sole remaining issue" pertains to immunity.  (Doc. 61, pp. 3–7.)  Plaintiff contends that Defendant is not entitled to qualified immunity because the manner in which he conducted the search violated clearly-established law.[7]  (Id.)  For the reasons set forth below, the Court agrees with Defendant; in short, Defendant is entitled to qualified immunity as to Plaintiff's Section 1983 Fourth Amendment claim because Plaintiff failed to meet his burden of showing that, at the time of the alleged violation, an objectively reasonable officer in Defendant's position should have known that his actions were violative of the Constitution.

---

[6] Plaintiff's Second Amended Complaint does not articulate his precise theory of recovery under the Fourth Amendment, stating that Plaintiff seeks to recover for injuries caused by Defendant's "invasion of privacy" and "excessive use of force" during the cavity search. (Doc. 50, pp. 8–9.) Additionally, in his Response to Defendant's Motion, Plaintiff frames his Fourth Amendment claim as one for an unreasonable search, focusing on the lack of privacy and the assertion of physical force to attempt to prove that Defendant's actions were not objectively reasonable. (See doc. 61.) However, such a distinction is legally insignificant in this case because Defendant asserts the affirmative defense of qualified immunity. As such, Plaintiff is required to show that Defendant's actions violated clearly established law, regardless of which Fourth Amendment theory he intended to rely upon; as explained herein, Plaintiff has failed to meet this burden.

[7] It is not clear whether Plaintiff intended to assert his claim against Defendant in his individual capacity, official capacity, or both. (See doc. 50.) In his Motion, Defendant states that Plaintiff's claim(s) are against him in his "official capacity," but both he and Plaintiff dedicate their respective briefs to the issue of qualified immunity, (doc. 58, p. 1; doc. 61, p. 3)—an affirmative defense only available to defendant-officials sued in their individual capacities. See Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (qualified immunity protects officials "in their individual capacities"). Accordingly, the Court assumes that Plaintiff intended this to be an individual-capacity claim.

### A.     **Qualified Immunity Standard**

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple, 334 F.3d at 994 (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). The doctrine "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012) (quotations and citations omitted). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (internal quotation marks and alteration omitted).

To rely upon qualified immunity, a defendant first must show that he acted within his or her discretionary authority. Mobley v. Palm Beach Cty. Sheriff Dep't., 783 F.3d 1347, 1352 (11th Cir. 2015). Specifically, a defendant must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, Plaintiff does not dispute that Defendant was acting within his discretionary authority as a police officer when he performed the alleged body cavity search. (See doc. 61, p. 3.) Therefore, Defendant may properly

assert the defense of qualified immunity, and the burden now shifts to Plaintiff to show that qualified immunity is not appropriate.  See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Court must grant qualified immunity unless the facts taken in the light most favorable to a plaintiff show: (1) that there was a violation of the Constitution; and (2) that the illegality of the defendant's actions was clearly established at the time of the incident.  Hoyt, 672 F.3d at 977.  As to the second prong, the violation of a constitutional right is clearly established if, at the time of the alleged violation, a reasonable official would understand that his conduct violates that right.  See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc).  A plaintiff must show that the allegedly violated right was "clearly established" in one of three ways.  First, the plaintiff may point to a case with indistinguishable material facts decided by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state, affirming the existence of the right and "provid[ing] clear notice of the violation." Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007).  Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct."  Id.  Finally, a plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009).

Importantly, the Court has "the sound discretion to determine which prong of qualified immunity should be analyzed first."  Militello v. Sheriff of Broward Sheriff's Office, 684 F. App'x 809, 812 (11th Cir. 2017) (per curiam); see Pearson v. Callahan, 555 U.S. 223, 236 (2009) (courts may first address whether right was clearly established); Morris v. Town of Lexington, Ala., 748

F.3d 1316, 1322 (11th Cir. 2014) ("A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other."). "In other words, [the Court] may choose in certain cases to go straight to the second element (bypassing the first) and analyze it." Militello, 684 F. App'x at 812. This flexibility allows courts to "rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the relevant facts make out a constitutional [violation] at all" where it is appropriate to do so. Pearson, 555 U.S. at 239. This is one of those cases; for the reasons set forth below, the Court finds that, even assuming Defendant violated Plaintiff's Fourth Amendment rights by performing an unreasonable anal cavity search, it cannot be said that the illegality of his conduct was clearly known at the time of the incident underlying this lawsuit.

### B.    Application to Plaintiff's Claim

As noted above, Plaintiff seeks to hold Defendant liable for conducting a body cavity search in violation of the Fourth Amendment. (Doc. 50, pp. 7–9.) Specifically, Plaintiff contends that Defendant performed a "manual body cavity search," which "occurs when the police put anything into a suspect's body cavity[] or take anything out." Gonzalez v. City of Schenectady, 728 F.3d 149, 158 (2d Cir. 2013). This type of search is related to—but distinct from—a "strip search," which "occurs when a suspect is required to remove his clothes," and a "visual body cavity search," where the police "observe the suspect's body cavities without touching them (as by having the suspect to bend over, or squat and cough, while naked)." Id. Here, Plaintiff does not allege— nor is there evidence to show—that Defendant subjected him to a strip or visual body cavity search.

Regardless of the type of search, however, "the underlying command of the Fourth Amendment is always that searches . . . be reasonable," and "what is reasonable depends on the context within which a search takes place." New Jersey v. T. L. O., 469 U.S. 325, 337 (1985).

Indeed, "[t]he law governing [cavity and strip] searches is far from settled; the rules alter with circumstances, and the circumstances are myriad." Gonzalez, 728 F.3d at 158. Where, as here, the officer-defendant performs a "post-arrest [manual] body cavity search, the law enforcement officer must have 'at least a reasonable suspicion' that the person to be searched possesses contraband and that the contraband is reasonably suspected to be located in the area to be searched." Richardson v. Quitman County, 912 F. Supp. 2d 1354, 1374 (M.D. Ga. 2012) (quoting Evans v. Stephens, 407 F.3d 1272, 1279 (11th Cir. 2005)). "Whether an officer has a reasonable suspicion is an objective question viewed from the standpoint of a reasonable police officer at the scene." Evans, 407 F.3d at 1280 (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). A court must also examine the "totality of the circumstances" surrounding the search itself to determine whether various factors "collectively establish" that the search was unreasonable in violation of the Fourth Amendment. Id. at 1282. These factors include "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Powell v. Barrett, 541 F.3d 1298, 1305 (11th Cir. 2008) (quoting Bell v. Wolfish, 441, U.S. 520, 559 (1979)).

Here, Plaintiff does not dispute that Defendant had a "reasonable suspicion" to conduct a search, (doc. 61, pp. 5–6), or contend that the initiation of the body cavity search was unreasonable or unwarranted, (see id. at p. 7 ("[Defendant] had a number of reasonable options to conduct a cavity search" in other, more private locations or to delegate the task to more qualified personnel)). Instead, Plaintiff disputes the reasonableness of the circumstances surrounding the search, arguing that Defendant "lost qualified immunity by conducting a search in an unreasonable manner that a reasonably prudent law enforcement would have known . . . was clearly unreasonable . . . ." (Doc. 61, p. 6.) However, even assuming (as the Court must at this stage of the litigation) that Defendant

penetrated Plaintiff's anal cavity to search for contraband, Plaintiff has not met his burden of showing that Defendant's actions were clearly established as unconstitutional at the time of the search. See Flores v. Satz, 137 F.3d 1275, 1277 (11th Cir. 1998) (noting that plaintiffs have "the burden of showing that the federal rights allegedly violated were clearly established" and that "[t]his burden is not easily discharged") (citation omitted).

Plaintiff does not cite—or attempt to analogize—any materially similar case law with facts that "squarely govern" this case, and the Court's own research likewise revealed none. See Evans, 407 F.3d at 1283. Plaintiff also has not shown that Defendant's conduct was "so egregious as to violate . . . the Fourth Amendment on its face." Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). Instead, Plaintiff appears to argue that Defendant's actions violate a "broader, clearly established principle" articulated in binding caselaw such that "every objectively reasonable government official facing the circumstances would [have] know[n] that [his] conduct did violate federal law when [he] acted.'" Jones v. Fransen, 857 F.3d 843, 852 (11th Cir. 2017) (quoting Loftus v. Clark-Moore, 690 F.3d 1200, 1204–05 (11th Cir. 2012)) (internal quotation marks omitted). Specifically, Plaintiff cites to Evans v. Stephens, 407 F.3d 1272, to show that the sum total of Defendant's conduct was "clearly unreasonable and a violation of Plaintiff's rights under the Fourth Amendment." (Doc. 61, pp. 5–8.)

In Evans, the Eleventh Circuit held that an arresting officer was not entitled to qualified immunity following a post-arrest investigatory strip search of the plaintiff-arrestees at a county jail. 407 F.3d at 1283. The defendant-officer arrested and transported the plaintiffs to a jail; upon entering the building, the officer walked one plaintiff into "a broom closet or supply room" where he "pestered [the plaintiff] with racist language" while demanding that he take off his clothes. Id. at 1276. The plaintiff resisted, and the officer "put him in a choke hold and held him against the

11

wall until [he] began to gag." Id. At that point, the second plaintiff was thrown into the room and the two men collided, causing them to collapse. Id. Both plaintiffs were then forced to remove their underwear and the officer used a baton to search them as he continued to "taunt[ them] with laughter, racist language[,] and threats of prison." Id. at 1277. The court also explained that "[e]ach Plaintiff was forced to disrobe, ridiculed, and penetrated by an object in front of the other." Id. at 1281. Specifically, "while conducting the search, [the arresting officer] inserted the same baton or club—without intervening sanitation—in each Plaintiffs' anus and used the same baton or club to lift each man's testicles." Id. The court concluded that "the totality of the circumstances—for example, the physical force, anal penetration, unsanitariness of the process, terrifying language, and lack of privacy—collectively establish a constitutional violation." Id. at 1282.

As to qualified immunity, the Eleventh Circuit in Evans first noted that "[n]o preexisting case law established this [conduct as a constitutional] violation or made it obviously clear." Id. at 1283. However, it went on to explain,

> Seldom does a general standard such as "to act reasonably" put officers on notice that certain conduct will violate federal law given the precise circumstances before them: Fourth Amendment law is intensely fact specific. But we conclude the supposed facts of this case take the manner of the searches well beyond the "hazy border" that sometimes separates lawful conduct from unlawful conduct. The violation was obvious.

Id. (internal citation omitted). Accordingly, the court found that the arresting officer was not entitled to qualified immunity, reasoning that "[n]o objectively reasonable policeman could have believed that the degrading and forceful manner of th[e] strip search . . . was 'reasonable' in the constitutional sense." Id. at 1283.

While Evans is undoubtedly applicable to the case at hand, it does not "appl[y] with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendant['s]

conduct." Long, 508 F.3d at 584.  Indeed, the facts of this case fall far short of Evans.  When viewed in the light most favorable to Plaintiff, the record in this case shows that Defendant, a CNT agent, asked Plaintiff—who, earlier that evening, was found with a bag of methamphetamine and arrested in relation to a CNT narcotics investigation—if he was hiding any additional contraband (drugs) on his person.  (Doc. 59-2, pp. 1, 6–7; doc. 61, p. 1; doc. 62, p. 1.)  Plaintiff responded in the affirmative and told Defendant they were "up his ass."  (Doc. 62, p. 1.)  Defendant then put on latex gloves, leaned Plaintiff over the hood of a police vehicle, pulled down the back of Plaintiff's pants, and performed a manual cavity search in a location that was visible from one or more public areas.  (Id.)  Defendant did not search Plaintiff at any point after Plaintiff indicated that the comment was a joke, and the two men did not interact further after the search.  (See doc. 59, p. 4; doc. 62, pp. 1–2.)

Unlike the defendants in Evans, there is no evidence that Defendant subjected Plaintiff to a strip search or used threatening language, physical violence, or unsanitary procedures.  Indeed, Defendant used a clean pair of gloves to briefly examine Plaintiff's rectum, as opposed to the officers in Evans who inserted a baton or club into both plaintiffs' rectums without intervening sanitation.  Further, unlike the officers in Evans who used physical force including throwing the plaintiffs into one another, here there are no facts indicating that Defendant applied any force to Plaintiff other than the minimal force necessary to conduct the search.  Moreover, while the defendants in Evans threatened the plaintiffs with deplorably racist language, here Plaintiff is the only one alleged to have used offensive language when describing where he had hidden drugs.  Plaintiff stresses that Defendant performed the search outside the Ambulance Entrance of the hospital, which, like the location of the search in Evans, was not totally secluded from "the view of the public."  (Doc. 61, pp. 7–8.)  While other officers were present for the search, Plaintiff does

13

not allege—nor is there evidence to show—that any member of the public *actually* saw Defendant search Plaintiff.  See Evans, 407 F.3d at 1281 (citing, in its discussion about privacy concerns during searches, Justice v. Peachtree City, 961 F.2d 188, 193 (11th Cir. 1992), which "not[ed] that arrestee and officers were the only people in room" for strip search of juvenile).  Moreover, unlike the plaintiffs in Evans, Plaintiff was not "forced to disrobe;" Defendant, at most, exposed Plaintiff's buttocks for a short period of time.  See id.

Finally, Plaintiff contends that Defendant should have known his actions were unreasonable because "CNT Agents are prohibited from conducting . . . body cavity searches" and Defendant "could/should have simply walked [Plaintiff] back to the safe and private confines of the hospital." (Doc. 61, p. 7.)  While it is undisputed that manual cavity searches violate CNT Policy, Defendant's violation of that policy does not render his actions unreasonable in the constitutional sense.  "Officials[] . . . do not lose qualified immunity by mere violation of some administrative provision." Thrower v. Ziegler, 514 F. App'x 941, 942–43 (11th Cir. 2013) (per curiam); see also City & County of San Francisco v. Sheehan, 575 U.S. 600, ___, 135 S. Ct. 1765, 1777 (2015) ("Even if an officer acts contrary to her training, . . . that does not itself negate qualified immunity where it would otherwise be warranted."); Russo v. City of Cincinnati, 953 F.2d 1036, 1044 (6th Cir. 1992) ("[T]he Supreme Court has indicated that the violation of established procedure alone is insufficient to overcome a qualified immunity claim." (citing Davis v. Scherer, 468 U.S. 183, 194 (1984))).  Rather, "it must have been clearly established that the conduct at issue violates the Constitution, not internal policies." Latits v. Phillips, 878 F.3d 541, 553 (6th Cir. 2017).

In sum, Plaintiff has not met his burden of establishing that, at the time of the search, "every like-situated, reasonable government agent" in Defendant's position faced with the same

circumstances would have known "that what [he] is doing violates federal law." <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1288 (11th Cir. 1998) (citation omitted). Accordingly, Plaintiff is unable to overcome Defendant's qualified immunity defense and Defendant is insulated from liability for this claim. The Court therefore **GRANTS** Defendant's Motion on this issue.[8]

## II. Attorney's Fees and Punitive Damages

In his Second Amended Complaint, Plaintiff makes a general request for attorney's fees. (Doc. 50, p. 10.) However, a claim for attorney's fees under federal law requires a viable underlying claim. <u>See</u> 42 U.S.C. § 1988 (providing that the court may allow "the *prevailing party*, other than the United States, a reasonable attorney's fee") (emphasis added). Because no substantive claim remains viable, Plaintiff's claim for attorney's fees must be dismissed. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on this claim.

---

[8] As noted in Note 2, <u>supra</u>, Count II of Plaintiff's Second Amended Complaint also references the Eighth and Fourteenth Amendments. (Doc. 50, p. 8.) Plaintiff's only elaboration on this claim is in the introductory section of the pleading, where Plaintiff alleges violations of his Eighth Amendment right "to be free of cruel and unusual punishment, including torture," and his Fourteenth Amendment rights "to the equal protection of the laws" and "to be provided with proper medical care." (<u>Id.</u> at p. 1.) To the extent Plaintiff wished to assert such claims against Defendant, they fail as a matter of law. First, Plaintiff cannot assert a claim under the Eighth Amendment because "it applies only after a citizen has been convicted of a crime," a situation that is undisputedly inapplicable to the present case. <u>Weiland v. Palm Beach County</u>, 792 F.3d 1313, 1328 (11th Cir. 2015); <u>see</u> <u>Taylor v. Ledbetter</u>, 818 F.2d 791, 812 n.7 (11th Cir. 1987) ("The eighth amendment only applies to convicts in government custody . . . .") (Tjoflat, J., concurring in part and dissenting in part). As to the Fourteenth Amendment, an equal protection claim requires Plaintiff to show "'that (1) he is similarly situated with other p[ersons] who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race.'" <u>Mann v. Joseph</u>, 805 F. App'x 779, 785 (11th Cir. 2020) (quoting <u>Jones v. Ray</u>, 279 F.3d 944, 946–47 (11th Cir. 2001)). The record is devoid of evidence regarding Defendant's treatment of anyone other than Plaintiff, let alone that such treatment was spurred by class-based animosity. Finally, to recover on a claim that he was entitled to, but denied, medical care, Plaintiff must adduce evidence showing "both [that he had] an objectively serious medical need and that a [d]efendant acted with deliberate indifference to that need." <u>Burnette v. Taylor</u>, 533 F.3d 1325, 1330 (11th Cir. 2008). Plaintiff has not met this burden. To the contrary, the undisputed record shows that Plaintiff received medical care immediately following his arrest, and he has not alleged any other "medical need," much less one that qualifies as "objectively serious." <u>Id.</u> Accordingly, the Court **GRANTS** Defendant's Motion on these claims as well.

Plaintiff also claims he is entitled to punitive damages. (Doc. 50, pp. 9–10.) "A plaintiff in a § 1983 suit cannot recover punitive damages unless he first demonstrates that he has been deprived of a right secured by the Constitution or laws of the United States." Curves, LLC v. Spalding County, No. 3:07-CV-10-JTC, 2010 WL 11507905, at *7 (N.D. Ga. July 23, 2010), aff'd, 685 F.3d 1284 (11th Cir. 2012). As discussed above, Plaintiff cannot recover on any claims against Defendant under Section 1983. Without any remaining underlying claims, Plaintiff is not entitled to punitive damages, and the Court **GRANTS** Defendant's Motion on this issue.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** the joint Motion for Summary Judgment filed by Defendant Brian Krouse, Joseph Hood, and Gary Woodruff, (doc. 57). Specifically, the Court **GRANTS** the Motion as to all claims asserted against Defendant Brian Krouse and **DENIES as moot** the Motion as to Hood and Woodruff, who have already been terminated from the case, (doc. 57). The Court also **DENIES as moot** the Motion for Summary Judgment filed by Adam Willis, as he is no longer a party to this action, (doc. 55). The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

**SO ORDERED**, this 14th day of July, 2020.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA